IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**COMMON CAUSE NEW YORK**, as an
organization and on behalf of its members;
**BENJAMIN BUSCHER; SEAN
HENNESSEY; REBECCA LIBED;
ANDREW GERALD; SUSAN MILLER;**
and **SARAH MILAM;**

          Plaintiffs,

    and

**UNITED STATES OF AMERICA;**
and **PEOPLE OF THE STATE OF
NEW YORK;**

          Plaintiff-Intervenors,

    v.

**BOARD OF ELECTIONS IN THE CITY
OF NEW YORK; MARIA R.
GUASTELLA, FREDERIC M. UMANE,
JOSE MIGUEL ARAUJO, JOHN
FLATEAU, MICHAEL MICHEL,
ALAN SCHULKIN, SIMON SHAMOUN,
ROSANNA VARGAS, JOHN WM.
ZACCONE,** and **ROBERT SIANO,** in their
official capacities as Commissioners of the
Board of Elections in the City of New York;
and **MICHAEL J. RYAN**, in his official
capacity as the Executive Director of the
Board of Elections in the City of New York;

          Defendants.

Case No. 1:16-cv-06122-NGG-RML

---

## CONSENT JUDGMENT AND DECREE

On or about November 3, 2016, Common Cause New York, Benjamin Buscher and Sean

Hennessey filed a Complaint against the Board of Elections in the City of New York, its

Commissioners, and its Executive Director, (collectively, "the NYCBOE") alleging violations of

Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

Thereafter, the plaintiffs, together with Rebecca Libed, Andrew Gerald, Susan Miller, and Sarah

Milam (collectively, the "Private Plaintiffs"), filed an amended complaint adding claims on

behalf of the added plaintiffs.  The Private Plaintiffs alleged that the procedures employed by the

NYCBOE to remove the names of the individual plaintiffs, members of Common Cause New

York, and similarly situated voters, from New York City's official list of registered voters,

violated Sections 8(a) and 8(d) of the NVRA, 52 U.S.C. § 20507(a), (d).  *See* Priv. Plts.' First

Am. Compl. at 2 (ECF Doc. 13).

     This Court granted the United States of America ("United States") leave to intervene.

(ECF Doc. 22).  The United States' Complaint in Intervention alleged that the NYCBOE violated

Section 8 of the NVRA by: (1) removing voters from the City's official list of registered voters

based solely on a voter's failure to vote, in violation of 52 U.S.C. § 20507(b)(2); (2) removing

voters from the City's official list of registered voters without using NVRA-mandated notice and

confirmation procedures for voters who are thought to have moved from the jurisdiction, in

violation of 52 U.S.C. § 20507(d)(1)(B)(i), (ii); (3) failing to maintain accurate and current voter

registration lists in a uniform and nondiscriminatory manner, in violation of 52 U.S.C.

§ 20507(b)(1); and (4) failing to conduct a general program that makes a reasonable effort to

remove the names of eligible voters from a voter registration list by reason of the death of the

registrant or by reason of a change in the residence of the registrant in violation of 52 U.S.C.

§ 20507(a)(4).  *See* U.S. Compl. at 14-15 (ECF Doc. 23).

     The Court also granted leave to intervene to the People of the State of New York, by its

attorney, Eric T. Schneiderman, Attorney General of the State of New York ("NYAG").  (ECF

Doc. 28). The NYAG's Complaint in Intervention alleged that the NYCBOE violated Article 5 of the New York Election Law by: (1) removing voters from a voter registration list solely on the basis of a voter's failure to vote; and (2) immediately removing voters from a voter registration list based on National Change of Address ("NCOA") information, rather than affording those voters two successive federal general elections to confirm their continued eligibility, in violation of N.Y. Election L., §§ 5-400(1), 5-708(5)(c). *See* NYAG Compl. at 40-42 (ECF Doc. 29). The NYAG also alleged violations of Section 8 of the NVRA. *Id*. at 38-40.

The Private Plaintiffs, the United States, the NYAG, and the NYCBOE, through counsel, have conferred and agree that this action should be settled without the delay and expense of litigation. The parties share the goals of: (1) ensuring that New York City residents are not removed from official lists of registered voters absent the procedural safeguards set forth in the NVRA and the New York Election Law, and (2) improving the accuracy of voter registration records through a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of registered voters. Accordingly, the parties have negotiated in good faith and hereby agree to the entry of this Consent Decree as an appropriate resolution of the alleged violations of the NVRA and New York Election Law.

Common Cause/New York, represented by Private Plaintiffs' counsel, recently filed an action against the members of the New York State Board of Elections, *Common Cause/New York v. Brehm*, Case No. 1:17-cv-06770-AJN, in the United States District Court for the Southern District of New York, alleging that Sections 5-213(1), 5-213(2), and 5-712(5) of the New York Election Law, and in particular the movement of eligible voters to inactive status, violates the NVRA. Nothing in this settlement agreement is intended to affect those claims or suggest in any way that Private Plaintiffs agree that Sections 5-213(1), 5-213(2), and 5-712(5) of the New York

Election Law are valid or permissible under the NVRA.  While the *Brehm* case is pending and subject to the NYCBOE implementing any changes necessitated by the resolution of that case, Common Cause/New York agrees not to assert claims against the Defendants subject to this Consent Decree for their compliance with Sections 5-213(1), 5-213(2), and 5-712(5) of the New York Election Law.

The United States, the NYAG, the Private Plaintiffs, and the NYCBOE stipulate and agree that:

1.      The Court has jurisdiction over this action pursuant to 52 U.S.C. § 20510(a) and 28 U.S.C. §§ 1331, 1345, and 1367.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 112(c) and 1391(b).

3.      The Private Plaintiffs brought suit under the NVRA's private right of action, 52 U.S.C. § 20510, and 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over their claims, which arise under federal law.  28 U.S.C. § 1331.

4.      The NVRA authorizes the Attorney General of the United States to bring a civil action for such declaratory or injunctive relief as is necessary to carry out the Act.  52 U.S.C. § 20510(a).  The United States does not concede the NYAG's authority to bring claims under the NVRA.  The United States takes no position on any state law claim raised in this case.

5.      The NYAG asserts claims under New York Election Law pursuant to N.Y. Exec. Law § 63(1).  The NYAG also asserts claims under the NVRA.

6.      The NYCBOE is obligated to comply with Section 8 of the NVRA.  52 U.S.C. § 20507.

7.      The NYCBOE is obligated to comply with the New York Election Law.

8.      The NYCBOE is responsible for activities undertaken in its borough offices and

for ensuring that those activities comply with federal and state laws. N.Y. Elec. Law §§ 3-200, 212, 214, 216, 300.

9. The Board of Elections in the City of New York and its Commissioners are proper defendants in this action.

10. The NVRA was passed in 1993 "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal Office" while "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1), (4).

11. Section 8 of the NVRA and Article 5 of the New York Election Law each address state voter list maintenance procedures for elections for federal office. 52 U.S.C. § 20507; N.Y. Election L., §§ 5-400 *et seq.*, 5-700 *et seq.*

12. Section 8 of the NVRA and Article 5 of the New York Election Law prescribe the conditions under which voters may be removed from voter registration lists and the procedures that must be followed before making those removals. 52 U.S.C. § 20507(a); N.Y. Election L., §§ 5-400 *et seq.*, 5-700 *et seq.*

13. Programs to maintain accurate and current voter registration lists must be uniform and nondiscriminatory, and they must comply with the Voting Rights Act of 1965 and Article 5 of the New York Election Law. 52 U.S.C. § 20507(b)(1); N.Y. Election L., § 5-614.

14. Programs to maintain accurate and current voter registration lists may not remove voters from those lists solely because a voter did not vote. 52 U.S.C. § 20507(b)(2); N.Y. Election L., § 5-400(1).

15. Section 8 of the NVRA and Article 5 of the New York Election Law permit removal of the name of a registered voter from the voter registration lists upon the registrant's request, for mental incapacity or for criminal conviction. 52 U.S.C. § 20507(a)(3)(A)-(B); N.Y.

Election L., § 5-400(1)(b), (c), (g).

16.     Section 8 of the NVRA and Article 5 of the New York Election Law also require a general voter registration list maintenance program that makes a reasonable effort to remove ineligible persons from the voter registration lists because of the person's death, or because the registrant has moved to another jurisdiction, in accordance with procedures set forth in the NVRA and the New York Election Law.  52 U.S.C. § 20507(a)(4); N.Y. Election L., §§ 5-213, 5-400(1)(e)-(f), 5-712.

17.     Section 8 of the NVRA and Article 5 of the New York Election Law further specify the two circumstances under which registered voters may be removed from the voter registration lists because the registrant has moved to another jurisdiction.  52 U.S.C. § 20507(d)(1).

18.     First, the name of a person can be removed from the voter registration list on grounds of a change of residence based upon the voter's written first-hand confirmation of a change of address to a location outside of the registrar's jurisdiction.  52 U.S.C. § 20507(d)(1)(A); N.Y. Election L., §§ 5-400(2)(b)-(d).

19.     Second, the name of a person can be removed from the voter registration list on the grounds of a change of residence, but only after two other conditions are met:

(a)     The registrant fails to respond to a specific confirmation notice prescribed by the State and sent by the NYCBOE.  52 U.S.C. § 20507(d)(1)(B)(i); N.Y. Election L., §§ 5-213, 5-400(1)(f), 5-712(1)-(2).  That notice, which must be sent by forwardable mail, also must be a postage prepaid and preaddressed return card on which the registrant may state his or her current address, and which contains specific instructions and information.  52 U.S.C. § 20507(d)(2); N.Y. Election L.,

§ 5-712; and,

(b)    The registrant then fails to vote or fails to appear to vote during the period ending on the day after the second federal general election subsequent to the confirmation notice being sent. 52 U.S.C. § 20507(d)(1)(B)(ii); N.Y. Election L., §§ 5-213, 5-400(1)(f).

20.    Section 8 of the NVRA and Article 5 of the New York Election Law provide a safe harbor example of a source of second-hand information indicating a change of address outside the jurisdiction: change of address information supplied by the United States Postal Service through its National Change of Address (NCOA) program. 52 U.S.C. § 20507(c)(1)(A); . N.Y. Election L., § 5-708(5).

21.    Section 8 of the NVRA and Article 5 of the New York Election Law require that any program with the purpose of systematically removing the names of ineligible voters from the official list of eligible voters be completed not later than 90 days prior to the date of a primary election or general election for federal office. 52 U.S.C. § 20507(c)(2)(A); N.Y. Election L. § 5-712(4).

22.    The NYCBOE has not complied with the voter list maintenance procedures required by Section 8 of the NVRA and Article 5 of the New York Election Law by:

(a)    Violating the NVRA's and the New York Election Law's requirement that programs to maintain accurate and current voter registration lists may not remove voters solely by reason of a voter's failure to vote. 52 U.S.C. § 20507(b)(2); N.Y. Election L. § 5-400(1).

(b)    Violating the NVRA's and the New York Election Law's requirement that a voter who is to be removed on grounds of a change of residence may only be removed

if the voter fails to respond to a specific confirmation notice sent by the
NYCBOE. 52 U.S.C. § 20507(d)(1)(B)(i); N.Y. Election L., §§ 5-213, 5-
400(1)(f), 5-712(1)-(2).

(c)   Violating the NVRA's and the New York Election Law's requirement that a voter
to be removed on grounds of a change of residence may only be removed if the
voter fails to vote or appear to vote during the period ending on the day after the
second federal general election subsequent to the confirmation notice being sent.
52 U.S.C. § 20507(d)(1)(B)(ii); N.Y. Election L., §§ 5-213, 5-400(1)(f).

(d)   Violating the NVRA's and the New York Election Law's requirement that
programs to maintain accurate and current voter registration lists must be uniform
and nondiscriminatory. 52 U.S.C. § 20507(b)(1); N.Y. Election L., § 5-614.

(e)   Violating the NVRA's and the New York Election Law's requirement that the
NYCBOE conduct a general program that makes a reasonable effort to remove
the names of eligible voters by reason of the death of the registrant or by reason of
a change in the residence of the registrant in accordance with the requirements set
forth in Sections 8(b)-(d) of the NVRA, and Article 5 of the New York Election
Law. 52 U.S.C. § 20507(b)(1); N.Y. Election L., §§ 5-213, 5-400(1)(e)-(f), 5-712.

(f)   Removing named plaintiffs Buscher and Hennessy, and other similarly situated
voters, including members of Common Cause New York, from the voter
registration list in violation of the federal and state statutory provisions cited
above. 52 U.S.C. § 20507; N.Y. Election L., §§ 5-400 *et seq.*, 5-700 *et seq.*

WHEREFORE, the parties having freely given their consent, and the terms of this
Consent Decree being fair, reasonable, and consistent with NVRA and New York Election Law

requirements, it is hereby ORDERED, ADJUDGED, and DECREED that:

23.     Within 90 days of the effective date of this Consent Decree, the NYCBOE shall

review every voter registration removed from its registration lists between July 1, 2013 and the

effective date of this Consent Decree, and shall identify any voter improperly removed from

voter registration lists in violation of Section 8 of the NVRA or Article 5 of the New York

Election Law.  Upon identifying a voter improperly removed from the registration list, the

NYCBOE shall immediately reinstate that voter's registration, excepting any voter who

subsequently re-registered to vote or was restored to and remains in active status prior to the

effective date of this Consent Decree.

24.     The NYCBOE shall develop and implement uniform policies and procedures

designed to ensure that:

(a)     Voters are not removed from voter registration lists solely by reason of the voter's

        failure to vote;

(b)     Any voters who are improperly removed are restored to their prior registration

        status except for those who are currently registered to vote;

(c)     Voters who are removed from voter registration lists on grounds of a change of

        residence are only removed in compliance with the requirements set forth in

        Sections 8(b)-(d) of the NVRA and Article 5 of the New York Election Law.  As

        part of the remedy here, the NYCBOE shall base such removals for change of

        residence only on either: (1) the voter's written first-hand confirmation of a

        change of address to a location outside of the registrar's jurisdiction, or (2) some

        reliable second-hand information indicating a change of address outside of the

        jurisdiction where the voter also: (a) fails to respond to a specific confirmation

notice prescribed by the State and sent by the NYCBOE that meets the requirements of the NVRA and the New York Election Law, and (b) fails to vote or fails to appear to vote during the period ending on the day after the second federal general election subsequent to the confirmation notice being sent. For purposes of the remedy here, reliable second-hand information can consist of information gleaned from the safe harbor NCOA process; alternatively, other possible examples of reliable second-hand information indicating a change of address can include, but are not limited to, undertaking a uniform mailing of a voter registration card, sample ballot, or other election mailing to all voters in a jurisdiction, such that election authorities can use information obtained from returned non-deliverable mail;

(d)     NYCBOE programs or activities designed to protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration lists for elections for federal office are uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965; and

(e)     The NYCBOE conducts a general program that makes a reasonable effort to remove the names of eligible voters by reason of the death of the registrant or by reason of a change in the residence of the registrant in accordance with the requirements set forth in Sections 8(b)-(d) of the NVRA and Article 5 of the New York Election Law.

25.     As set forth below, the parties envision a three-part strategy to help develop and implement such uniform policies and procedures. Accordingly, the NYCBOE shall, at a minimum:

(a)     Create a Comprehensive Remedial Plan for the development and implementation of such uniform policies and procedures, as set forth below;

(b)     Designate specific NYCBOE employees to be responsible for the development and implementation of such uniform policies and procedures described in the Comprehensive Remedial Plan, as set forth below; and

(c)     Carry out the provisions of the Comprehensive Remedial Plan and comply with the reporting and enforcement obligations, as set forth below.

## PART 1: COMPREHENSIVE REMEDIAL PLAN

26.     Within 90 days of the effective date of this Consent Decree, the NYCBOE shall create a Comprehensive Remedial Plan to address its violations of election law, including the specific violations outlined in paragraph 22, and to establish an appropriate process to remove the names of voters from registration lists by reason of the death of the registrant or by reason of a change in the residence of the registrant in accordance with the requirements set forth in Sections 8(b)-(d) of the NVRA and Article 5 of the New York Election Law.

27.     Within 90 days of the effective date of this Consent Decree, the NYCBOE shall provide counsel for the United States, the NYAG, and the Private Plaintiffs with its draft Comprehensive Remedial Plan. The United States, the NYAG, and the Private Plaintiffs shall have 30 days to respond. If the parties cannot in good faith agree upon the terms of an appropriate Comprehensive Remedial Plan within 30 days of the date the United States, the NYAG, or the Private Plaintiffs provided its response, any party may seek relief from the Court. Responses to any such request for relief shall be filed with the Court within 10 days of the request. Any agreed upon Comprehensive Remedial Plan shall be filed with the Court and, if deemed appropriate by the Court, so ordered.

Page 11 of 37

28.     At a minimum, the Comprehensive Remedial Plan shall include the following:

**Description of list maintenance program:**

(a)     The Comprehensive Remedial Plan shall describe in detail all NYCBOE list maintenance procedures, including, but not limited to all of the procedures listed below in paragraph 28(b).  Such descriptions shall include, but are not limited to:

   (i)     A step-by-step account of the actions undertaken in each procedure;

   (ii)    The role and responsibilities of each employee involved in the procedure;

   (iii)   The identity, by title, and role of the NYCBOE staff member(s) responsible for oversight of each procedure;

   (iv)    Where particular procedures work in sequence or in conjunction, explanations as to how the procedures interact, where appropriate;

   (v)     The elements of each procedure designed to ensure that the records of ineligible voters are accurately identified and that the records of eligible voters are not identified in error;

   (vi)    The steps by which procedures implemented in the systems of the NYCBOE are reflected in the single, uniform, official, centralized, interactive computerized statewide voter registration list, where appropriate; and

   (vii)   Where applicable, any additional procedural or technological safeguards implemented for each list maintenance program to ensure compliance with Sections 8(b)-(d) of the NVRA and Article 5 of the New York Election Law.

(b)     The procedures described in the Comprehensive Remedial Plan shall include, but

Page 12 of 37

are not limited to:

(i)     Returns from Mail Check Procedure (Status A-X Run);

(ii)    National Change of Address Procedure (NCOA Run);

(iii)   Four-Year Inactive Bulk Run Procedure (Status X-2 Run);

(iv)    INFO66 ITC Procedure (INFO66 ITC Run);

(v)     Citywide Duplicate Voter Registration Procedure;

(vi)    Potential Duplicate Notification from NYSVoter Procedure;

(vii)   Deceased Notification from NYSVoter Procedure;

(viii)  Other List Maintenance Performed through AVID Voter Registration
        Function;

(ix)    Other List Maintenance Performed through AVID Voter Correction
        Function;

(x)     Voter History Procedure; and

(xi)    Duplicate voter check using the Citywide Potential Duplicate Registration
        Search Report.

(c)     Nothing in paragraphs 28(a)-(b) prevents the NYCBOE from changing,
        consolidating, renaming, adding to, or eliminating the existing list maintenance
        procedures set forth in paragraph 28(b).

(d)     The Comprehensive Remedial Plan shall also describe in detail NYCBOE's
        procedures for identifying, investigating and reinstating voters improperly
        removed since July 1, 2013 from the voter registration lists, including, but not
        limited to, procedures for:

        (i)     Reviewing information received from voters, NYCBOE staff, the United

Page 13 of 37

States, the NYAG, or the Private Plaintiffs regarding a list maintenance practice that may have improperly removed voters since July 1, 2013, including but not limited to, a registration issue experienced by a particular voter;

(ii)    Determining the scope of the list maintenance practice leading to the improper removal, and the number of voters affected by the practice;

(iii)    Reinstating and correcting voter records of all voters identified as having been removed by the improper list maintenance practice; and

(iv)    Identifying, by title, the NYCBOE staff member(s) responsible for overseeing the investigation of any improper list maintenance procedures.

**Reporting timelines:**

(e)    The Comprehensive Remedial Plan shall provide timelines for each component of NYCBOE's list maintenance program, including, but not limited to:

(i)    Where appropriate, establishing timelines and target dates for each step within each procedure, taking into account the anticipated election schedule and the requirements of the NVRA and the New York Election Law to complete voter registration list maintenance programs 90 days prior to federal elections;

(ii)    Establishing regular timelines for producing data, which shall include, but is not limited to, the information set forth in paragraphs 37, 38, and 39;

(iii)    Establishing a method by which NYCBOE employees will monitor whether scheduled timelines for each procedure are met and if not met, a method for reporting and correcting these issues; and

        (iv)     Identifying, by title, the NYCBOE staff member(s) responsible for ensuring timely reporting.

**Reviewing and evaluating compliance with list maintenance program:**

    (f)     The Comprehensive Remedial Plan shall describe NYCBOE procedures for tracking whether each borough office is conducting list maintenance activity in accordance with Section 8 of the NVRA and Article 5 of the New York Election Law including, but not limited to:

        (i)     Reviewing data from each borough office, including but not limited to, the data set forth in paragraph 37, and evaluating whether the information reflects potential or actual implementation problems jurisdiction-wide or at any individual borough office or offices;

        (ii)    Annual auditing of offices' list maintenance procedures;

        (iii)   Unscheduled, unannounced site visits to review procedures, policies, forms, and training materials related to list maintenance;

        (iv)    Actions the NYCBOE will take when data, including but not limited to, the data described in paragraphs 37, 38, and 39, auditing, or site visits indicate that a borough is not conducting list maintenance activity in accordance with Section 8 of the NVRA and Article 5 of the New York Election Law;

        (v)     Identifying, by title, the NYCBOE staff member(s) responsible for reviewing and evaluating compliance;

        (vi)    Procedural and/or technical changes necessary to prevent manual cancellations of allegedly duplicate registrations when they do not match

on first/last name or date of birth; and

(vii)   Procedural and/or technical changes necessary to prevent the initiation of the voter confirmation procedures for voters with returned mail or NCOA notices indicating they have moved to an address within the same precinct.

(g)   The Comprehensive Remedial Plan shall provide that election preparation activities shall take preference over systematic list maintenance during the 60 days prior to an election.

**Description of complaint intake procedures:**

(h)   The Comprehensive Remedial Plan shall describe NYCBOE procedures for receiving and responding to voter complaints related to list maintenance activities, including complaints related to voters' registration status. Such description shall include, but not be limited to:

(i)   The process by which the NYCBOE receives and tracks complaints from voters;

(ii)   The process by which recorded complaints are investigated and resolved by employees at the NYCBOE;

(iii)   The process by which voters filing complaints are informed of resolution by the NYCBOE;

(iv)   All oversight and auditing conducted by the NYCBOE of the complaint procedures;

(v)   The manner in which complaints are tracked by the NYCBOE from receipt to resolution; and

(vi)   The identity and role of the NYCBOE staff member(s) responsible for

Page 16 of 37

oversight of the intake procedures.

**Technical changes needed to implement list maintenance plan:**

(i)     The Comprehensive Remedial Plan shall describe technical changes or changes to NYCBOE policy to be made in order to implement the list maintenance plan, including the timeframe for completion and the parties responsible for implementation.  At minimum, the plan shall describe:

  (i)     Technical changes to be implemented to address the inconsistent treatment of merged duplicate voter registration records between the NYSVoter and AVID system;

  (ii)    Changes to user permissions for the INFO66 ITC manual flagging function;

  (iii)   Technical and procedural changes designed to prevent transactions performed in AVID from failing to upload to NYSVoter, and to detect and remedy any such transactions that fail to upload;

  (iv)    Technical changes to the existing electronic complaint tracking database, or, if necessary, the design of a new electronic complaint tracking database that ensures that voter complaints are tracked, as set forth paragraph 28(h)(v), and recorded in an electronically searchable format;

  (v)     Technical changes needed to track necessary data including, but not limited to, the data set forth in paragraphs 37, 38, and 39; and

  (vi)    The identity, by title, of the NYCBOE staff member(s) responsible for implementing technical changes.

**Training needed to implement list maintenance plan:**

      (j)     The Comprehensive Remedial Plan shall describe the training program to be implemented by the NYCBOE with respect to the NYCBOE's general program of voter list maintenance.  At minimum, the plan shall include:

           (i)     An inventory of existing training manuals and materials;

           (ii)     A schedule for creating or updating training manuals and materials to implement the list maintenance plan;

           (iii)     Training requirements and timelines for each type of employee involved in the voter list maintenance program;

           (iv)     A description of the mechanism by which the relevant NYCBOE supervisory staff member will monitor whether each employee has met his or her training requirements; and

           (v)     The identity, by title, of the NYCBOE staff member(s) responsible for implementing the training program.

## PART 2: DESIGNATE RESPONSIBILITY TO SPECIFIC NYCBOE EMPLOYEES

      29.     To help implement the Comprehensive Remedial Plan, the NYCBOE shall designate specific employees as coordinators, as described below.  As for any coordinator position required by this Consent Decree, the NYCBOE need not hire new employees to fill those positions, but may designate current employees to these positions.

**List Maintenance Coordinator(s):**

      30.     Within 60 days of the effective date of this Consent Decree, the NYCBOE shall designate one or more "NVRA List Maintenance Coordinator(s)" (hereinafter "List Maintenance Coordinator(s)") in the central office of the NYCBOE.  The NYCBOE will include the name(s)

of the designated List Management Coordinator(s) in the Comprehensive Remedial Plan. The List Maintenance Coordinator(s) will be responsible for coordinating NYCBOE list maintenance efforts across the jurisdiction, as described below. The NYCBOE shall designate a new List Maintenance Coordinator within 45 days of a vacancy.

31.     Within 90 days of the effective date of this Consent Decree, the NYCBOE shall designate one or more employees to serve as the "NVRA List Maintenance MIS Coordinator(s)" (hereinafter "MIS Coordinator(s)") in the Management Information Systems office of the NYCBOE to assist the List Maintenance Coordinator(s) with technological requirements, as described below. The NYCBOE shall designate a new MIS Coordinator within 45 days of a vacancy.

32.     Within 90 days of the effective date of this Consent Decree, the NYCBOE shall designate one or more employees to serve as "NVRA List Maintenance Borough Office Coordinators" (hereinafter "Borough Office Coordinators") in each of the NYCBOE's five borough offices to supervise list maintenance activities in each borough office. Borough Office Coordinators shall report to the List Maintenance Coordinator(s), as described below. The NYCBOE shall designate a new Borough Office Coordinator within 45 days of a vacancy.

33.     The NYCBOE shall notify the United States, the NYAG, and the Private Plaintiffs of the identity of the List Maintenance Coordinator(s), MIS Coordinator(s), and all Borough Office Coordinators upon their designation.

**Duties of List Maintenance Coordinator(s):**

34.     The List Maintenance Coordinator(s) duties shall include, but not be limited to:

(a)     Coordinating and overseeing NYCBOE list maintenance practices in compliance with Section 8 of the NVRA, Article 5 of the New York Election Law and the

provisions of this Comprehensive Remedial Plan as described in paragraphs 28(a)-(b) (list maintenance procedures), 28(e) (reporting timelines), 28(f) (review and evaluation of list maintenance program), and 28(j) (training);

(b)     Ensuring uniformity and consistency of list maintenance practices at all borough offices;

(c)     Ensuring that Borough Office Coordinators complete their NVRA and New York Election Law responsibilities accurately and on time, and providing assistance as necessary;

(d)     Providing Borough Office Coordinators with reminders and updates regarding such responsibilities at least two times per year;

(e)     Administering the training program to be implemented by the NYCBOE as set forth in the Comprehensive Remedial Plan and as described below:

(i)     Initial Training:

(1)     Within 30 days of the effective date of the approval of the Comprehensive Remedial Plan, providing training to the MIS Coordinator(s) on NVRA and New York Election Law compliance responsibilities and the obligations of the MIS Office;

(2)     Within 45 days of the effective date of the approval of the Comprehensive Remedial Plan, providing training to Borough Office Coordinators on NVRA and New York Election Law compliance responsibilities;

(3)     Within 45 days of the training referenced in paragraph 34(e)(i)(1), coordinating and attending the initial training session held by the

Page 20 of 37

MIS Coordinator(s) on NVRA and New York Election Law compliance responsibilities and the obligations of the MIS Office; and

(4) Within 45 days of the training referenced in paragraph 34(e)(i)(2), coordinating and attending the initial training sessions held by each of the Borough Office Coordinators on NVRA and New York Election Law compliance responsibilities;

(ii) Ongoing Training:

(1) Coordinating and attending all mandatory annual NVRA and New York Election Law trainings provided by the MIS Coordinator(s) for all MIS office employees who participate in list maintenance activities or have other NVRA and New York Election Law responsibilities; and

(2) Coordinating and attending all mandatory annual NVRA and New York Election Law trainings provided by Borough Office Coordinators for all borough office employees who participate in list maintenance activities or have other NVRA and New York Election Law responsibilities;

(f) Administering procedures for tracking whether each borough office is conducting timely and accurate list maintenance activity in accordance with Section 8 of the NVRA and Article 5 of the New York Election Law as set forth in the Comprehensive Remedial Plan;

(g) Determining the need for corrective action jurisdiction-wide or at any individual

borough office or offices to ensure compliance with Section 8 of the NVRA, Article 5 of the New York Election Law, and this Consent Decree and, if necessary, directing implementation of any corrective action within 30 days of identifying the need for such action;

(h)     Overseeing the implementation of technical changes or changes to NYCBOE policy to be made in order to implement the list maintenance plan as set forth in the Comprehensive Remedial Plan; and

(i)     Providing the information set forth in paragraph 37 to the United States, the NYAG, and the Private Plaintiffs for each month that this Consent Decree remains in effect.

**Duties of MIS Coordinator(s):**

35.     The MIS Coordinator(s) duties shall include, but not be limited to:

(a)     Providing the List Maintenance Coordinator(s) with all technological assistance necessary to implement the Comprehensive Remedial Plan;

(b)     Assisting the List Maintenance Coordinator(s) in administering the training program to be implemented by the NYCBOE with respect to the NYCBOE's general program of voter list maintenance as set forth in the Comprehensive Remedial Plan, to include:

    (i)     Attending mandatory training provided by the List Maintenance Coordinator(s) as referenced in paragraph 34(e);

    (ii)    Attending the training for Borough Office Coordinators described in paragraph 34(e);

    (iii)   Attending all mandatory annual NVRA and New York Election Law

trainings for borough office employees who participate in list maintenance activities or have other NVRA and New York Election Law responsibilities in order provide technical assistance, including the first such trainings as described in paragraph 34(e);

(iv)  Providing NVRA and New York Election Law training to all new MIS employees who participate in list maintenance activities within 30 days after the new employee's start date as described in paragraph 34(e);

(v)  Providing NVRA and New York Election Law refresher training to all MIS employees who participate in list maintenance activities on an annual basis as described in paragraph 34(e); and

(vi)  Certifying to the List Maintenance Coordinator(s) that all MIS employees who participate in list maintenance activities received annual training;

(c)  Assisting the List Maintenance Coordinator(s) in administering the procedures for tracking whether each borough office is meeting its reporting timelines and conducting list maintenance activity in accordance with Section 8 of the NVRA and Article 5 of the New York Election Law as set forth in the Comprehensive Remedial Plan; and

(d)  Providing technical assistance to Borough Office Coordinators.

## Duties of Borough Office Coordinators:

36.  Borough Office Coordinators duties shall include, but need not be limited to:

(a)  Coordinating and overseeing borough office compliance with Section 8 of the NVRA, Article 5 of the New York Election Law, and the Comprehensive Remedial Plan;

Page 23 of 37

(b)     Coordinating borough office compliance with the reporting deadlines set forth in the Comprehensive Remedial Plan and paragraphs 37, 38, and 39;

(c)     Notifying the List Maintenance Coordinator(s) and the MIS Coordinator(s) as soon as practicable of any implementation problems, training needs, and recommendations for improvement of list maintenance activities;

(d)     Assisting the List Maintenance Coordinator(s) in administering the training program to be implemented by the NYCBOE with respect to the NYCBOE's general program of voter list maintenance as set forth in the Comprehensive Remedial Plan, to include:

    (i)    Attending training provided by the List Maintenance Coordinator(s) and the MIS Coordinator(s) for Borough Office Coordinators described in paragraph 34(e);

    (ii)    Providing mandatory NVRA and New York Election Law training to all borough office employees at their site who participate in list maintenance activities or have other NVRA and New York Election Law responsibilities as described in paragraph 34(e);

    (iii)    Providing mandatory annual NVRA and New York Election Law refresher training to all borough office employees who participate in list maintenance activities at their site as described in paragraph 34(e);

    (iv)    Providing NVRA and New York Election Law training to all new borough office employees who participate in list maintenance activities at the site within 30 days after the new employee's start date as described in paragraph 34(e); and

(v)     Certifying to the List Maintenance Coordinator(s) that all borough office employees who participate in list maintenance activities received annual training.

## PART 3: REPORTING OBLIGATIONS AND ENFORCEMENT REMEDIES

### NYCBOE Monthly Reporting Obligation:

37.     Beginning 120 days from the effective date of this Consent Decree and until the termination of this Consent Decree, the NYCBOE shall, on the 15th day of the month (or the next business day), provide the United States, the NYAG, and the Private Plaintiffs a report in a Comma Separated Values (.csv), Excel Binary (.xls), or Excel Workbook (.xlsx) format, containing the following data broken down by each borough office for each month that this Consent Decree remains in effect:

(a)     The number of active voters;

(b)     The number of inactive voters;

(c)     The number of voter registrations transferred within the NYCBOE's jurisdiction, broken down by source of information indicating a voter's address has changed, including but not limited to:

    (i)     NCOA Notice;

    (ii)    Returned Mail; and

    (iii)   Voter Registration Application;

(d)     The number of voter registrations changed from active to inactive status, broken down by source of information indicating voter's address has changed, including but not limited to:

    (i)     NCOA Notice – No Forwarding Address;

(ii)    NCOA Notice – Forwarding Address Outside of Jurisdiction;

(iii)   Returned Mail – No Forwarding Address; and

(iv)   Returned Mail – Forwarding Address Outside of Jurisdiction;

(e)    The number of voter registrations changed from active to cancelled status, broken down by grounds for cancellation, including but not limited to:

(i)    Request of registrant, based upon submission of voter registration in another New York jurisdiction;

(ii)    Request of registrant, based upon other confirmation in writing; and

(iii)   Death of the registrant;

(f)    The number of voter registrations changed from inactive to cancelled status, broken down by grounds for cancellation, including but not limited to:

(i)    Change of address based upon second-hand information, no response to confirmation notice;

(ii)    Change of address based upon second-hand information, affirmative response to confirmation notice;

(iii)   Request of registrant, based upon submission of voter registration in another New York jurisdiction;

(iv)   Request of registrant, based upon other confirmation in writing; and

(v)    Death of the registrant;

(g)    The number of voter registrations changed from inactive to active status, broken down by grounds for activation, including but not limited to:

(i)    Return of confirmation notice;

(ii)    Voting or appearing to vote in an election; and

(iii)   Submission of New Voter Registration Form;

(h)   The number of voter registration records contained in each of the following

categories of the NYSVoter Duplicate Maintenance Report:

(i)   Potential Duplicate;

(ii)   Marked Duplicate;

(iii)   Marked Non-Duplicate;

(iv)   No Action <= 30 Days;

(v)   No Action >= 30 Days;

(vi)   Purged Voters; and

(vii)   Purged by County EMS;

(i)   The number of voter registration records contained in each of the following

categories of the NYSVoter Deceased Maintenance Report:

(i)   Potential Deceased;

(ii)   Marked Deceased;

(iii)   Marked Non-Deceased;

(iv)   No Action <= 30 Days;

(v)   No Action >= 30 Days;

(vi)   Purged Voters; and

(vii)   Purged by County EMS;

(j)   The number of voter registration records flagged for INFO66 broken down by the

grounds for flagging.

**NYCBOE Semi-annual Audit:**

38.   The NYCBOE shall submit to semi-annual audits by the NYAG of its list

maintenance activities each year this Consent Decree is in effect to ensure compliance with Article 5 of the New York Election Law and Section 8 of the NVRA. On February 15 and August 15 of each year, the NYCBOE shall produce a data file to the NYAG and to the United States that contains individual voter files removed from the voter rolls over the preceding six months. The data file shall include a representative sample of voters removed pursuant to each of the procedures listed in Paragraph 28(b), but shall not include less than 1% of voters cancelled pursuant to each procedure. After reviewing the data file, the NYAG, in consultation with the United States, shall provide written notice of any potential list management errors it identifies to the NYCBOE, and the NYCBOE shall investigate those potential errors pursuant to the procedures developed under Paragraph 28(d).

**NYCBOE Annual Reporting Obligation:**

39.    On or before March 1 of each year this Consent Decree is in effect (or the next business day), the NYCBOE shall file with the Court a report reflecting activity from the prior calendar year, which shall include, but need not be limited to, the following components:

(a)    A summary of efforts to implement each of the provisions and requirements of this Consent Decree, including the results of the NYCBOE's own internal tracking, audits, site visits, and calls, as provided in the Comprehensive Remedial Plan;

(b)    A description of any corrective action plans devised and implemented pursuant the Comprehensive Remedial Plan;

(c)    Updated copies of all new or revised NVRA and New York Election Law procedures, rules, regulations, publications, and training materials used in the preceding reporting period or to be used in the future reporting periods;

(d)     A report to the United States, the NYAG, and the Private Plaintiffs for each election during the prior calendar year of the following data broken down by each borough office.  The NYCBOE shall provide such information in a Comma Separated Values (.csv), Excel Binary (.xls), or Excel Workbook (.xlsx) format:

(i)     The number of provisional ballots cast by individuals whose voter registrations were in inactive status, broken down by source of information indicating voter's address has changed, including but not limited to:

(1)   NCOA Notice – No Forwarding Address;

(2)   NCOA Notice – Forwarding Address Outside of Jurisdiction;

(3)   Returned Mail – No Forwarding Address; and

(4)   Returned Mail – Forwarding Address Outside of Jurisdiction;

(ii)    The number of provisional ballots cast by individuals whose voter registrations were in cancelled status, broken down by grounds for cancellation, including but not limited to:

(1)   Change of address based upon second-hand information, no response to confirmation notice;

(2)   Change of address based upon second-hand information, affirmative response to confirmation notice;

(3)   Request of registrant, based upon submission of voter registration in another New York jurisdiction;

(4)   Request of registrant, based upon other confirmation in writing;

(5)   Death of the registrant; and

Page 29 of 37

          (6)   Duplicate registrant.

**Enforcement Remedies:**

    40.    Parties shall have the right to contact the Executive Director or Deputy Executive Director of the NYCBOE or their designees, with notice to counsel for the NYCBOE, regarding enforcement of this agreement. Nothing in this Consent Decree is intended to limit the ability of any party to contact NYCBOE officials or employees in connection with conducting Election Day hotlines, Election Protection activities, or any election monitoring activities by the United States, nor is any provision of this Consent Decree intended to prohibit or limit the United States from contacting any person as authorized by law.

    41.    The United States, the NYAG, or the Private Plaintiffs may object to any rule, regulation, form, plan, report, or document submitted by the NYCBOE pursuant to this Consent Decree on the ground that it does not comply, or is not sufficient to ensure compliance, with the NVRA, the Election Law, or this Consent Decree. The United States, the NYAG, or the Private Plaintiffs may also object to any action or inaction by the NYCBOE on the ground that it does not comply, or is not sufficient to ensure compliance, with the NVRA, the New York Election Law, or this Consent Decree.

    (a)    The United States, the NYAG, or the Private Plaintiffs shall provide the Defendants with written notice detailing any objection it may have.

    (b)    The parties shall make a good-faith effort to resolve the concerns of the United States, the NYAG, or the Private Plaintiffs.

    (c)    If the parties are unable to resolve any differences within 30 days after such written notice is sent to the NYCBOE, the United States, the NYAG, or the Private Plaintiffs may seek redress before this Court.

42.     The parties to this Consent Decree must employ best efforts to defend this Consent Decree against any legal challenge.

43.     This Consent Decree shall take effect once it has been approved by the Court and entered upon the docket ("the effective date").

44.     This Consent Decree may be terminated upon written agreement by the parties or a determination by the Court that the NYCBOE has complied with the terms of the Consent Decree, but shall not be eligible for termination until at least 30 days after the date of the second general election for Federal Office following the effective date of the Consent Decree ("the minimum term").

45.     To demonstrate that it has complied with the Consent Decree, after the expiration of the minimum term the NYCBOE shall provide a report (the "Compliance Report"), with appropriate documentation, to counsel for the United States and the NYAG, with a copy to the Private Plaintiffs, that establishes the NYCBOE's compliance with the Consent Decree and that the NYCBOE has the means and intent to continue to comply with Section 8 of the NVRA.

(a)     The United States and the NYAG shall each review the Compliance Report to determine in good faith whether the NYCBOE has complied with the Consent Decree. A conclusion of compliance may not be unreasonably withheld. The United States and the NYAG shall each provide their compliance determination to the NYCBOE within 90 days of receipt of the Compliance Report.

(b)     If the United States and the NYAG agree that compliance has been achieved, they shall, on notice to the Private Plaintiffs, file a stipulation with the Court to terminate the Consent Decree.

(c)     If the Private Plaintiffs disagree with the NYAG, the United States, and the

NYCBOE that compliance has been achieved, they may file a motion with this Court to extend the Consent Decree. In such a proceeding to extend the Consent Decree, the Private Plaintiffs bear the burden of proof to demonstrate, by a preponderance of the evidence, the existence of current and ongoing violations of the provisions of the NVRA or the New York Election Law addressed by the Comprehensive Remedial Plan. The NYCBOE shall not unreasonably withhold discovery from the Private Plaintiffs in such a proceeding.

46.     If the United States or the NYAG determines that the NYCBOE has not complied with the Consent Decree, and the NYCBOE disputes this conclusion, or if the United States or the NYAG does not make a compliance determination pursuant to Paragraph 45(a), the United States, the NYAG, and the NYCBOE shall meet and confer. The NYCBOE may thereafter file a motion with this Court seeking appropriate relief, including termination of the Consent Decree.

(a)     The NYCBOE shall provide at least 45 days' notice to the United States, the NYAG, and the Private Plaintiffs before filing such a motion. Failure to provide this notice, without obtaining the consent of the United States, the NYAG, the Private Plaintiffs, or the Court for a shorter notice period, shall result in the automatic rejection of the NYCBOE's application without consideration of its merits.

(b)     In such a proceeding to terminate the Consent Decree, the burden of proof rests upon the NYCBOE based upon a preponderance of the evidence.

(c)     If the NYCBOE's motion to terminate is granted, it shall immediately be relieved of all reporting obligations set forth in this Consent Decree.

(d)     If the NYCBOE's motion to terminate is denied, the NYCBOE may renew its

motion one year after the date of denial, upon 45 days' notice to the United States, the NYAG, and the Private Plaintiffs.

47.     The NYCBOE shall retain voter registration and list maintenance records related to the terms of this Consent Decree for the time periods provided in 52 U.S.C. §§ 20507(i) and 20701.  This shall include training materials and other documents related to the NYCBOE's list maintenance obligations under the NVRA and the New York Election Law.  The NYCBOE shall make these records available to counsel for the United States, the NYAG, or the Private Plaintiffs upon request.

48.     The Court shall retain jurisdiction of this case to enter further relief or such other orders as may be necessary for the effectuation of the terms of this agreement.

49.     As between the NYCBOE, the NYAG, and the United States, each party shall bear all of its own costs, expenses, and attorney's fees.

50.     The NYCBOE acknowledges that the Court, in its discretion, may award Private Plaintiffs reasonable attorney's fees and costs if they are determined to be prevailing parties in this litigation.  The NYCBOE and Private Plaintiffs retain their respective rights with respect to this issue but hope to resolve it amicably pursuant to a separate agreement.


The undersigned agree to entry of this Consent Decree.

Date: October 31, 2017

Respectfully submitted,

**For UNITED STATES OF AMERICA:**

BRIDGET M. ROHDE
Acting United States Attorney
Eastern District of New York

MICHAEL J. GOLDBERGER
Chief of Civil Rights
Civil Division
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

*Counsel for Plaintiff-Intervenor*
*United States of America*

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

T. CHRISTIAN HERREN, JR
RICHARD A. DELLHEIM
KAYCEE M. SULLIVAN
SAMUEL G. OLIKER-FRIEDLAND
RACHEL R. EVANS
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530

*Counsel for Plaintiff-Intervenor*
*United States of America*

**For PEOPLE OF THE STATE
OF NEW YORK**:


ERIC T. SCHNEIDERMAN
Attorney General
State of New York


LOURDES M. ROSADO
SANIA KHAN
DIANE LUCAS
AJAY SAINI
Civil Rights Bureau
Office of the New York State
Attorney General
120 Broadway
New York, New York 10271

*Counsel for Plaintiff-Intervenor
People of the State of New York*

For **COMMON CAUSE NEW YORK**, as
an organization and on behalf of its
members; **BENJAMIN BUSCHER; SEAN
HENNESSEY; REBECCA LIBED;
ANDREW GERALD; SUSAN MILLER;**
and **SARAH MILAM:**

NEIL A. STEINER
MAURICIO ALEJANDRO ESPAÑA
MAY K. CHIANG
NEGIN HADAGHIAN
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036

*Counsel for Plaintiffs*

EZRA D. ROSENBERG
JOHN POWERS
Lawyers' Committee for Civil Rights
1401 New York Avenue NW, Suite 400
Washington, DC 20005

*Counsel for Plaintiffs*

JOANNA ELISE CUEVAS INGRAM
JOSE PEREZ
LatinoJustice PRLDEF
99 Hudson Street, 14th Floor
New York, NY 10013

*Counsel for Plaintiffs*

For **BOARD OF ELECTIONS IN THE
CITY OF NEW YORK; MARIA R.
GUASTELLA, FREDERIC M. UMANE,
JOSE MIGUEL ARAUJO, JOHN FLATEAU,
MICHAEL MICHEL, ALAN SCHULKIN,
SIMON SHAMOUN, ROSANNA VARGAS,
JOHN WM. ZACCONE,** and **ROBERT SIANO,**
in their official capacities as Commissioners of the
Board of Elections in the City of New York; and
**MICHAEL J. RYAN,** in his official capacity as
the Executive Director of the Board of Elections
in the City of New York:

ZACHARY W. CARTER
Corporation Counsel
City of New York

_____
STEPHEN KITZINGER
New York Law Department
100 Church Street, Room 2-126
New York, NY 10007

*Counsel for Defendants*