

**JAMES E. JOHNSON**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**STEPHEN KITZINGER**
Phone: (212) 356-2087
SKitzing@law.nyc.gov

April 6, 2020

Honorable Nicholas G. Garaufis
Senior United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:  *Common Cause New York v. Board of Elections, et al.*
           Case No. 16 CV 6122 (NGG)

Dear Judge Garaufis,

      I am the Assistant Corporation Counsel assigned to represent the defendants in the above-referenced now resolved action brought pursuant to the National Voter Registration Act (the "NVRA") in which the plaintiff and intervenors alleged that the Board of Elections in the City of New York (the "Board") improperly cancelled the registration of voters.  Pursuant to the Consent Decree dated October 31, 2017, and approved by this Court on December 14, 2017 (the "Consent Decree"), the Board, the private plaintiffs, the state of New York ("NY"), and the United States (the "US" or the "Government"), agreed upon the terms of a Comprehensive Remedial Plan (the "CRP").  The Government now moves this Court to "So Order" the CRP.

      Pursuant to paragraph 27 of the Consent Decree, the Court should only "So Order" the CRP if it deems it to be "appropriate."  For the reasons set forth below, it is not presently appropriate for the Court to do so.  The US's argument rests on two pillars – first, that it took the BOE too long to finalize the CRP and, second, that in the event that there are "implementation problems" or the Board does not meet its CRP obligations, "negotiations . . . may . . . fail to protect the rights of New York voters with suitable speed."  Neither of these arguments supports the "So Ordering" of the CRP.

      Contrary to the US's assertion, there was no requirement that the CRP be filed within 150 days following approval of the Consent Decree.  To the contrary, no party was permitted to seek Court intervention to resolve any disputes concerning the terms of the CRP within that initial 150 day period.  Following that period, any party – including the Board – could have sought the Court's intervention and assistance in resolving any disputes over the terms of

the CRP. Rather than seeking the Court's assistance, the parties continued to negotiate until all were satisfied that the CRP met the requirements of the Consent Decree and provided sufficient detail to ensure that the Board would meet its obligations. Furthermore, during this period, the New York Election Law underwent numerous significant modifications that, among other things, impacted voter registration list maintenance.[1] The Board also introduced two upgrades to its Archival and Voter Images and Data ("AVID") system which is used to maintain the voter registration records. Each of these actions necessitated changes to the procedures that are a part of the CRP.

As to the Government's claim that negotiations alone may be insufficient to protect the rights of voters with suitable speed is also without merit. First, paragraph 41 of the Consent Decree sets forth a mechanism by which the private plaintiffs, NY, or the US may raise objection to "any action or inaction by the NYCBOE on the ground that it does not comply, or is not sufficient to ensure compliance, with the NVRA, the New York Election Law, or this Consent Decree." Consent Decree, ¶ 41. That paragraph then sets forward a dispute resolution mechanism and timeline – that has already been "So Ordered" by the Court. So ordering the CRP would not alter this. Second, there is nothing to suggest that the Board has not been meeting – and will not continue to meet – its other obligations under the Consent Decree and CRP. To the contrary, the Board is and has met its other obligations to date which included reviewing all voter registrations that were cancelled on or after July 1, 2013, to ensure that such cancellation was proper (Consent Decree, ¶ 23), monthly reporting (Consent Decree, ¶ 37), semi-annual audits (Consent Decree, ¶ 38), and appointing necessary personnel (Consent Decree, ¶¶ 30-32). Again, none of the plaintiffs have asserted that there are any current deficiencies in these areas and any that were raised previously were promptly rectified without the need for Court intervention.

Lastly, given the changes to the New York Election Law, the CRP even recognizes (the CRP states that it is a "'working document'; It is expected that further changes will be adopted in the near future and as such, there will be changes to the manner in which the Board performs its statutory duties and responsibilities that it is likely that [the CRP] will need to altered and amended to comply." CRP, p. 30. Already, as a result of the current pandemic, the legislature has amended the Election Law and the Governor has issued numerous Executive Orders affecting the Election Law, each of which impacts the Board's ability to operate in its ordinary course. Furthermore, the public health concerns related to staffing together with the numerous confirmed and presumed COVID-19 illnesses has limited the Board's capacity to

---

[1] Among these changes were that where a voter relocates anywhere within the state, notification from, among other places, the National Change of Address and the Department of Motor Vehicles, would result in such voter's address being changed. Previously, it would have resulted in the registration ultimately being cancelled unless the new address was within the jurisdiction of the same board of elections.

complete all of the duties and functions required by law in the timeframes currently in effect. Layering on the threat of contempt will not serve the public's interest. As set forth above, pursuant to paragraph 41 of the Consent Decree, plaintiffs have the right to object to any proposed alterations to, among other things, alterations to the CRP. Accordingly, "So Ordering" the CRP will needlessly add another administrative hurdle to the Board's efforts to comply with the terms of the Consent Decree by mandating that a motion be made to approve any alterations to the CRP even where there is no objection by any party. Such a requirement will actually hinder the Board's ability to comply with all applicable laws.

For the foregoing reasons, defendants respectfully request that the Court deny the United States' motion to have the Court "So Order" the Comprehensive Remedial Plan. Thank you in advance for your consideration of this request.

Respectfully yours,

s/Stephen Kitzinger
Stephen Kitzinger
Assistant Corporation Counsel

cc: All parties (via ecf only)